**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS**

| | |
|---|---|
| Janie Hawkins, individually and on behalf of all others similarly situated, | 7:21-cv-08788 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Coca-Cola Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     The Coca-Cola Company ("defendant") manufactures, packages, labels, markets, and sells piña colada flavored soda under the Fanta brand purporting to have "100% Natural Flavors" ("Product").



2.     The piña colada is a cocktail made with rum, cream of coconut or coconut milk, and pineapple juice, usually served either blended or shaken with ice.

3.     The taste of a piña colada is valued so highly that it has often been associated with non-alcoholic foods, from Italian ices to cookies, and to soda.

4.     Defendant markets the Product with the prominent statement, "100% NATURAL FLAVORS," above pictures of half a coconut and a wedge of pineapple.



5.     The representation that the Product has "100% Natural Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects. [1]

6.     By identifying the Product as having "100% Natural Flavors," with a picture of pineapple and coconut, consumers expect only natural flavors, because that is what the label says.

7.     The digital and/or print marketing includes images of pineapples and coconuts.

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

 

8.    Federal and identical state regulations prohibit false and deceptive identification of the source of a food or beverage's characterizing flavors.

9.    These regulations require the Product to disclose whether its characterizing pina colada flavor is from natural pineapples or coconuts, natural ingredients other than pineapples and coconuts, and/or artificial, chemical sources, such as petroleum byproducts. 21 C.F.R. § 101.22.

10.    Natural flavor is defined as:

> essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.
>
> 21 C.F.R § 101.22(a)(3).

11.    Artificial flavor is defined as:

> any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.
>
> 21 C.F.R § 101.22(a)(1).

## I.   PRODUCT CONTAINS UNDISCLOSED ARTIFICIAL FLAVOR

12.   Taste is the combination of sensations arising from specialized receptor cells located in the mouth.

13.   Sweetness and tartness are important contributors to the flavor perception of pineapples.

14.   The Product's ingredients include "Natural Flavors" and "Malic Acid."

CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, MALIC ACID, MODIFIED FOOD STARCH, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), SUCROSE ACETATE ISOBUTYRATE, GLYCEROL ESTER OF ROSIN, CITRIC ACID

15.   Malic acid provides a tart and fruity taste.

16.   Malic Acid (molecular formula $C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

17.   Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069.

18.   L-Malic Acid occurs naturally in various fruits.

19.   D-Malic Acid does not occur naturally.

20.   D-Malic Acid is most commonly found as a racemic mixture, DL-Malic Acid, which is commercially made from petroleum products.

21.   Based on laboratory analysis, the Product includes the DL-Malic Acid to improve its tart and fruity taste.

4

22.   Ripe pineapples contain high levels of naturally occurring malic acid

23.   The quality and ideal taste of pineapple is determined by the balance of acid to sugar content.

24.   The Product could have used natural, L-Malic Acid, or more natural pineapple flavor.

25.   However, defendant used artificial DL-Malic Acid because it was likely cheaper or more accurately resembled natural flavors.

26.   DL-Malic Acid is not a "natural flavor" as this term is defined by federal and state regulations.

27.   DL-Malic Acid is derived from petroleum products and is an artificial flavor.

28.   DL-Malic Acid could function as a flavor enhancer or PH balancer if the flavor imparted by malic acid is not a core component of pineapple.

29.   A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

30.   PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

31.   Nevertheless, DL-Malic Acid enhances and simulates the Product's pina colada taste, which is derived partly from pineapple.

32.   The Product's front label is misleading because it states, "100% Natural Flavors."

33.   Consumers are misled by expecting the taste comes exclusively from natural flavors.

34.   Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

## II.   PRODUCT LACKS APPRECIABLE AMOUNT OF PINEAPPLE AND COCONUT INGREDIENTS

35.   The lower left corner of the Product states, "Piña Colada Flavored Soda With Other Natural Flavors."



36.   This language is typically used when a product has no appreciable amount of the characterizing ingredients, which includes pineapple and coconut.

37.   However, the Product has a whitish appearance, similar to that of a pina colada, which creates the impression it contains some pineapple and coconut ingredients.



38.   Pineapple juice is typically sold as cloudy, due to the suspended solids.

39.     However, the Product has no pineapple juice, which means its cloudy appearance is from somewhere else.

40.     This cloudy appearance is because of the use of citrus flavoring, which are oily.

41.     The ingredients include sucroseacetate isobutyrate, a weighting agent, which contributes opacity without contributing color in carbonated beverages.

42.     Additionally, this ingredient stabilizes the citrus oils.

43.     The added food starch, when coupled with the citrus oils comprising part of the natural flavors, enhances the cloudy appearance of the Product.

44.     The result is a beverage with not even one percent juice but with a physical appearance indicating it has *some* real pineapple and coconut.

## III.   CONCLUSION

45.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

46.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

47.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

48.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

49.     The Product is sold for a price premium compared to other similar products, no less than $2.29 for 20 oz, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

50.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

51.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

52.    Plaintiff Janie Hawkins is a citizen of New York.

53.    Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia.

54.    Defendant transacts business within this district through the sale of goods which it contracts to supply and supplies.

55.    The parties are citizens of different states.

56.    Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

Parties

57.    Plaintiff Janie Hawkins is a citizen of Spring Valley, Rockland County, New York.

58.    Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Georgia, Fulton County.

59.    Fanta was first made in Europe during the Second World War by The Coca-Cola Company's European divisions.

60.    The version of Fanta sold today is based on the Fanta that was re-introduced to Italy in the mid-1950s.

61.    This soda was unique because it was made with local produce instead of only sugary syrups.

8

62.     Fanta has always been known as a more "natural" and fruit-centric brand of soda than American soda brands, due to its European origins.

63.     In the United States, Fanta sodas are based on real fruit flavors, and have bright colors for their marketing.

64.     The Product is sold at thousands of locations – grocery stores, drug stores, big box stores, gas stations, convenience stores, etc. – and online.

65.     Plaintiff bought the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including ShopRite, 250 Route #59, Tallman, NY 10901, in October 2021, among other times.

66.     Plaintiff bought the Product because she expected it would contain "100% Natural Flavors" to provide its taste, not contain artificial flavoring and would contain more of the referenced fruit ingredients than it did.

67.     Plaintiff bought the Product at or exceeding the above-referenced price.

68.     Plaintiff relied on the representations identified here.

69.     Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

70.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

71.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

72.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

73.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following

classes:

> **New York Class:** All persons in the State of New York who
> purchased the Product during the statutes of limitations for
> each cause of action alleged.

74.    Common questions of law or fact predominate and include whether defendant's

representations were and are misleading and if plaintiff and class members are entitled to damages.

75.    Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

76.    Plaintiff is an adequate representative because her interests do not conflict with other

members.

77.    No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

78.    Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

79.    Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

80.    Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350

### (Consumer Protection Statute)

81.    Plaintiff incorporates by reference all preceding paragraphs.

82.    Plaintiff and class members desired to purchase a product that contained only natural

flavoring, and contained more of the referenced fruit ingredients, than it did.

83. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

84. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

85. Plaintiff relied on the representations.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

87. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it did not contain contained only natural flavoring, and contained more of the referenced fruit ingredients, than it did.

88. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

89. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Fanta brand, known for its sodas which were fruit-flavored, which is why it knew "100% Natural Flavors" resonated with consumers like Plaintiff.

90. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

91. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

92. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised as having only natural flavoring.

93.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

94.     Defendant had a duty to truthfully represent the Product, which it breached.

95.     This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the Fanta brand of beverages, known as one of, if not the preeminent, seller of fruit-flavored sodas.

96.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a globally recognized and trusted brand.

97.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

98.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

99.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural flavoring, and contained more of the referenced fruit ingredients, than it did

100.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

101.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 28, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

13