UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANIE HAWKINS, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

            v.

THE COCA-COLA COMPANY,

                                        Defendant.

---

No. 21-CV-8788 (KMK)

<u>OPINION & ORDER</u>

Jonathan Shub, Esq.
Shub Law Firm LLC
Haddonfield, NJ
*Counsel for Plaintiff*

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck, NY
*Counsel for Plaintiff*

Dakotah Burns, Esq.
Jane Metcalf, Esq.
Steven A. Zalesin, Esq.
Patterson Belknap Webb & Tyler LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiff Janie Hawkins ("Plaintiff") brings this putative class action against The Coca-Cola Company ("Defendant"), alleging that the labeling on Defendant's Fanta brand "Piña Colada flavored" soda (the "Product") is deceptive and misleading. (*See generally* First Am. Compl. ("FAC") (Dkt. No. 12).) Plaintiff brings claims for damages against Defendant for (1) violation of §§ 349 and 350 of the New York General Business Law ("GBL"), N.Y. G.B.L. §§ 349, 350; (2) common law breach of express warranty; and (3) common law fraud. (*See id.*

¶¶ 148–179.)[1]  Before the Court is Defendant's Motion To Dismiss the FAC (the "Motion").

(*See* Not. of Mot. (Dkt. No. 22).)  For the foregoing reasons, the Motion is granted.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following facts are drawn from the FAC and are assumed to be true for the purposes

of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension*

*Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant is a multinational beverage corporation with its principal place of business in

Atlanta, Georgia.  (*See* FAC ¶ 123.)  Included in Defendant's product lines is Fanta, a brand of

flavored soda with various varieties based on "real fruit flavors."  (*See id*. ¶¶ 124–125, 128.)  As

relevant to the instant Action, Defendant manufactures a "piña colada flavored" variety of Fanta

which Defendant represents on the label as containing "100% Natural Flavors."  (*Id*. ¶ 1.)  This

representation sits above pictures of half a coconut, a wedge of pineapple, and "two yellow

droplets representing juice from pineapples."  (*Id* ¶ 4.)

 

---

[1] Plaintiff voluntarily withdrew all other claims listed in the First Amended Complaint on
June 15, 2022.  (*See* Letter from Spencer Sheehan, Esq., to Court (June 15, 2022) (Dkt. No. 20).)

(*See id.* ¶¶ 1, 4.)

Plaintiff also cites the digital and print marketing of the Product, which features similar images of pineapples and coconut coupled with the assertion that there are 100% natural flavors in the Product.  (*Id*. ¶¶ 29–30.)



Plaintiff alleges that the Product's advertisements are false, deceptive, and misleading because the Product "contains artificial flavoring ingredients."  (*Id*. ¶ 5.)  Specifically, the Product's ingredients list "Malic Acid" as a component of the soda, directly after natural flavors. (*Id*. ¶ 32.)  Plaintiff alleges that "the ingredient does not disclose that this malic acid is an artificial flavoring ingredient which provides flavoring to the Product" because Defendant does not list malic acid by its specific name, "DL-Malic Acid."  (*Id*. ¶¶ 34–36.)  Plaintiff alleges that, unlike "L-Malic acid" which "occurs naturally in various fruits, such as those pictured on the Product's front label," DL-Malic acid "does not occur naturally."  (*Id*. ¶¶ 59–61.)  Plaintiff specifically alleges that "[l]aboratory analysis concluded this Product contains artificial, DL-Malic Acid instead of natural, L-Malic Acid."  (*Id*. ¶ 70.)

Plaintiff alleges several reasons as to why Defendant includes DL-Malic Acid in the Product.  For example, Plaintiff alleges that it is included: (1) "to help make the Product taste tart and fruity, like the pictured fruits taste naturally," (*id*. ¶ 65); (2) "to create, enhance, simulate, and/or reinforce the sweet, fruity, and tart taste that consumers associate with the pictured fruits," (*id*. ¶ 66); and (3) that it "could function as a flavor enhancer or PH balancer," (*id*. ¶ 83). Plaintiff concludes, however, that "because the flavor imparted by malic acid is a core component of the pictured fruits," malic acid "does not function as a flavor enhancer" but instead "fundamentally alters the original combination of sugar and natural L-Malic Acid . . . so that the flavors of the Product are no longer [] natural[.]" (*Id*. ¶¶ 86–87.)  In addition, Plaintiff alleges that the malic acid "is not a PH balancer because it is not necessary to change or maintain active acidity or basicity in the Product." (*Id*. ¶ 89.)  Plaintiff also alleges that the "Product lacks appreciable amount[s] of pineapple and coconut ingredients." (*Id*. ¶¶ 98–106.)

Finally, Plaintiff alleges that federal and state regulations "prohibit false and deceptive identification of the source of a food or beverage's characterizing flavors." (*Id*. ¶ 72.)  Here, Plaintiff alleges that the Product's "primary or characterizing flavor" is Piña colada, "which is understood by consumers to mean pineapple and coconut." (*Id*. ¶ 73 (quotation marks omitted).) The Product states in the lower left corner: "Piña Colada Flavored Soda With Other Natural Flavors[,]" which Plaintiff alleges is false and misleading, as it is "required to be accompanied by the word(s) 'artificial' or 'artificially flavored[.]'" (*Id*. ¶¶ 75–77 (quotation marks omitted).)

In at least October 2021, Plaintiff purchased the product "on one or more occasions" at various stores, including at ShopRite, 250 Route #59, Tallman NY 10901, for a "premium price" of "no less than $2.29 for 20 oz, excluding tax and sales." (*Id*. ¶¶ 112, 131, 134.)  Plaintiff alleges that she "purchased the Product because the packaging claimed it contained '100%

Natural Flavors' and that the only natural flavors were responsible for the Pina Colada and pineapple and coconut taste." (*Id*. ¶ 94.)  In purchasing the Product, Plaintiff alleges she "believed and expected the Product contained only natural flavoring[] and contained more of the referenced fruit ingredients," relying on the "words, terms coloring, descriptions layout, packaging, tags, and/or images on the Product, on the labeling," and on statements made in Defendant's digital, print, and social media marketing.  (*Id*. ¶¶ 132–33.)  Without this, Plaintiff alleges that she "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it."  (*Id*. ¶ 135.)

  B.  Procedural History

   Plaintiff filed her initial Complaint on October 28, 2021.  (*See* Compl. (Dkt. No. 1).)  On March 22, 2022, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss the original Complaint, (*see* Dkt. No. 10), but on April 8, 2022, Plaintiff filed the FAC, (*see* FAC).  On April 22, 2022, Defendant filed another pre-motion letter in anticipation of filing a motion to dismiss the FAC.  (*See* Dkt. No. 15.)  Following Plaintiff's response to Defendant's pre-motion letter, (*see* Dkt. No. 16), the Court held a pre-motion conference on May 17, 2022, (*see* Dkt. (minute entry for May 17, 2022)).  Pursuant to the briefing schedule adopted at the conference, Defendant filed the instant Motion on June 17, 2022.  (*See* Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 23).)  Plaintiff filed her Opposition on July 15, 2022, (*see* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 24)), and Defendant filed its Reply on July 29, 2022, (*see* Def.'s Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 25)).

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

Finally, fraud claims—including common law fraud claims—are subject to the heightened pleading standard set forth in Rule 9(b).  *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." (collecting cases)).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).  However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as

compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)).

B.  Analysis

Defendant argues that (1) Plaintiff fails to state a plausible claim under the GBL because Plaintiff alleges "conclusory and contradictory allegations" to "suggest that Fanta's label would mislead a reasonable consumer, (*see* Def.'s Mem. 4–9); (2) Plaintiff has failed to state a claim for breach of express warranty because Plaintiff failed to provide Defendant with pre-suit notice, (*see id.* at 9); and (3) Plaintiff has failed to plead fraud with particularity, as required under Rule 9(b), (*see id.* at 10).  The Court addresses each argument in turn, beginning with Defendant's argument as to Plaintiff's GBL claims.

1.  New York General Business Law § 349 and 350 Claims

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'"  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. Gen. Bus. L. §§ 349, 350).  "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (alteration in

original) (citation omitted)).  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (adopting the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

### a.  Consumer-Oriented Conduct & Injury

Defendant appears to concede—or at least, does not contest for purposes of its Motion— that Defendant's conduct was consumer-orientated.  (*See generally* Def.'s Mem.)  "A defendant engages in 'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or harm to the public interest.'"  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  This requirement is liberally construed, *id.*, and "may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  Here, Plaintiff alleges that Defendant "manufactures, packages, labels, markets[,] and sells" the Product "to consumers from third parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and/or online[.]"  (*See* FAC ¶¶ 1, 119.)  These allegations are sufficient to satisfy the first element of Plaintiff's GBL claim.  *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (observing that GBL §§ 349 and 350 "apply to virtually all economic activity, and their application has been correspondingly broad" (footnote omitted) (collecting cases)); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000)

(noting that the "consumer-oriented" requirement may be satisfied "by a showing that the practice has a broader impact on the consumer at large") (citation omitted).

Defendant also appears to concede or not contest for the purposes of its Motion that Plaintiff has sufficiently alleged an injury.  (*See generally* Def.'s Mem.)  "An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (alterations omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 278 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)).  "A plaintiff can show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'"  *Id.* (quoting *Izquierdo v. Mondelez Int'l Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2017) (quotation marks omitted)).  However, "[t]o allege injury under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product."  *Id.* (quotation marks and citation omitted); *see also Sabatano v. Iovate Health Scis. USA Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." (citation omitted)); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("In order to make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).  Typically, a plaintiff makes this allegation by asserting that a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this

10

premium and later discovered that the product "did not, in fact, have the marketed quality." *Duran*, 450 F. Supp. 3d at 350 (collecting cases).

Here, Plaintiff alleges that she "purchased the Product because the packaging claimed it contained '100% Natural Flavors' and that only natural flavors were responsible for the Pina Colada and pineapple and coconut taste." (FAC ¶ 94.) Plaintiff also alleges that she "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it." (*Id.* ¶ 135.) At this early stage of the case, these allegations suffice to allege a price premium theory of injury. *See Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *10–11 (S.D.N.Y. Nov. 9, 2020) (allegations that the plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"); *Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it" (citations omitted)); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory (citation and quotation marks omitted)); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it" (footnote and quotation marks omitted)).

11

b.  Materially Misleading Conduct

Defendant instead largely focuses on the second element of Plaintiff's GBL claims, arguing that Plaintiff cannot state a cognizable claim for violations of GBL §§ 349 and 350, because Plaintiff has not plausibly alleged "that the disputed advertising would be misleading to a reasonable consumer."  (*See* Def.'s Mem. 4–9.)  Specifically, Defendant argues that Plaintiff only "offers only conclusory and contradictory allegations—not facts—to suggest that Fanta's label would mislead a reasonable consumer."  (*Id*. at 3.)

To survive a motion to dismiss, plaintiffs "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers."  *Twohig*, 519 F. Supp. 3d at 160 (quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions").  "While it is possible for a court to decide this inquiry as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage."  *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases).  "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic."  *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20

12

(E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (explaining that claims which "border on fantasy" require "dismissal as a matter of law").

      Plaintiff primarily alleges that Defendant's representation that the Product contains "100% natural flavors" is misleading because the Product in reality contains an artificial form of Malic Acid, namely DL-Malic Acid.  (*See* FAC ¶¶ 1–5; 28–36.)  In addition, Plaintiff alleges that Defendant's representations as to the Product are misleading because they violate federal and state regulations dictating the "source of a food or beverage's characterizing flavors." (*See id*. ¶¶ 72–97.)  Defendant argues that Plaintiff cannot state a viable claim under the GBL "merely by alleging that some of Fanta's ingredients are 'artificial'" but rather must "plausibly allege that Fanta contains an artificial ingredient that functions as a flavor in the beverage."  (Def.'s Mem. 4–8 (emphasis omitted).)  Additionally, Defendant argues that Plaintiff's claims "are contradicted by her own allegations that malic acid in Fanta functions as a flavor enhancer."  (*Id*. at 8–9.)  For the reasons stated below, the Court agrees that Plaintiff has failed to allege that a reasonable consumer would be misled by the representations on the Product.

      Defendant cites several lines of cases, both inside and outside of the Second Circuit, that Defendant argues stand for the proposition that Plaintiff has no viable claim of deception.  (*See generally id*.)  While the Court notes that many of these cases are inapposite because they analyze other states' consumer protection laws, (*see, e.g., id.* at 4–6 (citing several cases analyzing California consumer protection laws), the Court does agree with the relevance of cases cited throughout the Circuit, now known as the "Vanilla Cases."  (*See* Def.'s Mem. 6–7; Def.'s Reply Mem. 4.)  The Vanilla Cases are a set of cases primarily brought by Plaintiff's counsel throughout district courts in the Second Circuit, alleging that various products marketed as

containing "vanilla" were materially misleading because the products allegedly did not contain naturally derived vanilla extract. *See, e.g., Wynn*, 2021 WL 168541 at *1–2; *Barreto*, 518 F. Supp. 3d at 800–801; *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at *1 (S.D.N.Y. Mar. 4, 2022); *Myers v. Wakefern Food Corp.*, No. 20-CV-8470, 2022 WL 603000, at *1–2 (S.D.N.Y. Mar. 1, 2022); *Santiful v. Wegmans Food Markets*, No. 20-CV-2933, 2022 WL 268955, at *1–2 (S.D.N.Y. Jan. 28, 2022); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 672–75 (S.D.N.Y. 2021); *Twohig*, 519 F. Supp. 3d at 157–159; *Steele v. Wegmans Food Markets Inc.*, 472 F. Supp. 3d 47, 48–49 (S.D.N.Y. 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *1 (S.D.N.Y. Oct. 27, 2020); *Cosgrove v. Blue Diamond Growers*, No. 19-CV-8993, 2020 WL 7211218, at *1–2 (S.D.N.Y. Dec. 7, 2020); *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 96–98 (S.D.N.Y. 2020). While Plaintiff argues that these "non-binding cases about the labeling of products as 'vanilla' [are] inapposite[,]" (*see* Pl.'s Mem. 5), the Court disagrees.[2]

---

[2] Plaintiff also cites to several out-of-Circuit cases that held "whether malic acid functions as a flavor . . . in a particular food product is a factual dispute inappropriate for resolution on a motion to dismiss." *Willard v. Tropicana Mfg. Co., Inc.*, No. 20-CV-1501, 577 F. Supp. 3d 814, 827 (N.D. Ill. Dec. 30, 2021); *see also Hayes v. Gen. Mills, Inc.*, No. 19-CV-5626, 2021 WL 3207749, at *3–4 (N.D. Ill. July 29, 2021); *Noohi v. Kraft Heinz Co.*, No. 19-CV-10658, 2020 WL 5554255, at *4 (C.D. Cal. July 20, 2020); *Sims v. Campbell Soup Co.*, No. 18-CV-668, 2018 WL 7568640, at *5 (C.D. Cal. Sept. 24, 2018); *Branca v. Bai Brands, LLC*, No. 18-CV-757, 2019 WL 1082562, at *8 (S.D. Cal. Mar. 7, 2019); *but see Akers v. Costco Wholesale Corp.*, 21-CV-1098, 2022 WL 4585417, at *3–4 (S.D. Ill. Sept. 29, 2022) (dismissing a case for failure to state a claim regarding flavored sparkling water allegedly containing synthetic malic acid). While Plaintiff is correct that this Court may consider cases in sister districts around the country, these cases analyze inapplicable consumer protection laws to the instant Action, namely Illinois and California consumer protection law. In addition, this Court is not aware of—nor has either party identified—any similar malic acid cases within the Second Circuit. (*See generally* Def.'s Mem; Pl.'s Mem.) As such, while the Court takes notice that these cases do exist in other sister courts, the Court will primarily rely upon an established and consistent body of case law in the Second Circuit applicable to this case.

The Vanilla Cases by and large stand for an analogous proposition that "the word vanilla, by itself, indicates a flavor, and the labels in question made no representation as to any particular ingredient(s) that were contained in the product or were the source of that flavor in the product." *Budhani*, 527 F. Supp. 3d at 677 (quotation marks omitted).  In coming to this conclusion, these courts distinguished Second Circuit precedent that found that a reasonable consumer could be misled into believing that a particular ingredient (rather than specific flavors) exists inside of a product.  *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (finding that a cracker box labeled with "MADE WITH WHOLE GRAIN" and "WHOLE GRAIN" could mislead a consumer into believing that the grain product was "entirely or at least predominantly whole grain").  As such, the Vanilla Cases established a new line of cases within the district courts in the Second Circuit, distinguishing "flavors" from "ingredients" in food and beverage products. Here, Plaintiff is clearly challenging the inclusion of various "flavors" in the Product, specifically whether they are "100% natural" as advertised on the bottle.  (*See* FAC ¶¶ 1–5.)

As expected, each product within the Vanilla Cases spans the gamut of alleged representations to consumers, all of which are not as explicit as the representation in the instant Action.  *See, e.g.*, *Wynn*, 2021 WL 168541 at *1–2 (vanilla almond milk product that contains no "qualifying terms" such as "vanilla-flavored," "contains artificial flavors," or "with other flavors"); *Pichardo*, 2020 WL 6323775, at *1 (non-dairy vanilla protein beverage with a vanilla flower vignette and the words "Smooth Vanilla").  However, the Court has identified at least one case within the Vanilla Cases whose representations are strikingly similar to the representations in the Product here.  In *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020), the plaintiff sued a grocery store chain over alleged representations in their vanilla ice cream product.  *Id.* at 48.  The ice cream container named the ice cream flavor as "vanilla" in

large letters across the front and the top of the container.  *Id*. at 49.  This is coupled with two

relevant disclosures on the front and top of the container:  (1) underneath the grocery store logo,

the product states that it contains "no artificial colors, *flavors*, or preservatives"; and (2)

underneath the ice cream flavor, the product states that it is "made with milk, cream, and *natural*

*vanilla flavor*."  *Id*. (emphasis added).  These disclosures, taken together, are effectively the

same as the disclosure at issue here: the product is made with "natural vanilla flavor" and

contains "no artificial . . . flavors," which is a claim that the ice cream has 100% natural flavors.

Faced with this representation, the court in *Steele* questioned the plaintiff's allegations

that a reasonable consumer could be materially misled for two reasons.  *See id.* at 50–51.  First,

the court questioned the bare claim of a misrepresentation on the vanilla ice cream container,

noting that "[t]hose who prefer natural ingredients will note that it has natural vanilla flavor[]

and no artificial flavors."  *Id*. at 50.  In addition, those consumers "interested in the actual

ingredients can read the list, which mentions neither vanilla beans nor extracts, but they will not

learn the components, amounts or proportions of the Natural Flavor."  *Id*.  Comparing the facts

of *Steele* to the "ingredient" line of cases in *Mantikas*, the court concluded that "the . . . container

does not mention vanilla beans or bean extract, and even if vanilla or bean extract is not the

predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where

there is deception."  *Id*.  The court, emphasizing the conundrum, asked: "What is

misrepresented?  The ice cream is vanilla flavored.  The sources of the flavor are natural, not

artificial."  *Id*.

Here, the Product matches the findings in *Steele*.  As alleged by Plaintiff, for those

consumers who "are increasingly concerned about the ingredients added to what they eat and

drink," (*see* FAC ¶¶ 6–27), consumers will read the front of the bottle stating that the soft drink

16

contains 100% natural flavors, (*see id*. ¶ 1).  For those consumers interested in the ingredients,

they will turn to the back side of the bottle that lists "natural flavors."  (*Id*. ¶¶ 32–36.)  There is

no evidence of the types of flavors in the product (though Plaintiff assumes it to be pineapple and

coconut based on visual representations on the bottle), nor are there any representations on the

proportions of those flavors.  Instead, the only two representations that a reasonable consumer

would see are two matching statements: that the soft drink contains "natural flavors."  Plaintiff

appears to concede this as well, alleging that "Plaintiff and consumers are unable to learn the

malic acid listed in the ingredients is the artificial version without a chemistry kit and detailed

knowledge of the relevant regulations.  (*Id*. ¶ 92.)  As the court in *Steele* asked: "[w]hat is

misrepresented?"  *Steele*, 472 F. Supp. 3d at 50.

 Again in a similar fashion as *Steele*, Plaintiff appears to concede that there are likely

*some* natural flavors within the product, namely pineapple and coconut.  (FAC ¶¶ 73–76.)

However, Plaintiff alleges that "the ingredient list does not disclose that [] malic acid is an

artificial flavoring ingredient which provides flavoring to the Product."  (*Id*. ¶ 34.)  Plaintiff

makes this conclusory claim several times throughout the complaint but provides a single

specific allegation to bolster her argument: alleging that "[l]aboratory analysis concluded this

Product contains artificial, DL-Malic Acid instead of natural, L-Malic Acid."  (*Id*. ¶ 70; *see also*

*id*. ¶ 69 ("Since there are natural and artificial types of malic acid, laboratory analysis is required

to identify which type was used in the Product.").)  Again, both *Steele* and the rest of the Vanilla

Cases provide this Court with guidance to interpret Plaintiff's allegation.

 In *Steele*, the plaintiff similarly cited an "alleged experts' test" in the form of "mass

spectronomy analysis" of four chemical compounds present in vanilla beans.  *Steele*, 472 F.

Supp. 3d at 50–51.  Even with specific allegations in the complaint based on this analysis, the

court concluded that "[t]he test may just confirm that the vanilla flavor derives solely from vanilla extract" and that the results are "left to speculation." *Id*. at 51.  Several other Vanilla Cases came to the same conclusion: "[a]bsent any factually substantiated allegations that the [vanilla compounds] in [the defendant's] product are not derived from natural sources," courts have found that plaintiffs "have failed to allege the presence of artificial flavors, and their claim that the ingredient list makes a materially misleading omission thus fails." *Wynn*, 2021 WL 168541, at *6; *see also Baretto*, 518 F. Supp. 3d at 803 (finding "the analysis on which the [c]omplaint heavily relies does not state or otherwise plausibly support the conclusion that the [vanilla compound] comes from artificial rather than natural sources); *Santiful*, 2022 WL 268955, at *4 (noting that the "[m]ost devastating" challenge to the plaintiffs' claim was that "[the] flavors can be either artificial or natural depending on how they are derived[,]" and finding that the complaint lacked "factually substantiated allegations that [the] flavors [were] in fact not derived from natural sources").

Here, Plaintiff plainly makes bare, unsubstantiated allegations about the *possibility* that the Product contains artificial DL-Malic acid, without any additional factual support from product testing.  Liberally construed, the operative Complaint alleges that the Product contains DL-Malic acid rather than natural L-Malic acid.  (FAC ¶¶ 28–71.)  However, instead of including factual allegations to support their claim, Plaintiff repeatedly deems it so with conclusory statements that Defendant "includes DL-Malic [a]cid to help make the Product taste tart and fruity[,]" "to create, enhance, simulate, and or/reinforce the sweet, fruity, and tart taste that consumers associate with the pictured fruits."  (*Id*. ¶¶ 65–67.)  And in an effort to substantiate the claim, Plaintiff again determines—without any support—that amorphous "laboratory analysis" concluded that the Product contained artificial malic acid instead of its

natural form.  (*Id*. ¶¶ 69–70.)  Even taking the allegations as true—as this Court must—at a motion to dismiss, the allegations in the instant Complaint are a far cry from raising "any factually substantiated allegations" that the Product contains artificial malic acid, rather than natural malic acid.  *Wynn*, 2021 WL 168541, at *6; *see also Myers*, 2022 WL 603000, at *4 (noting that the plaintiff "fail[ed] to provide any details whatsoever about [what] this laboratory test entailed" such as "describ[ing] the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc.").  As in the Vanilla Cases, the "the lack of sufficient allegations here that the purportedly artificial flavors are in fact artificial is fatal to Plaintiff['s] claim that the ingredient list has made a material omission."  *Wynn*, 2021 WL 168541 at *6.  As such, the Complaint's allegations that the Product contains artificial flavors are conclusory statements that the Court is not required to accept.  *See Iqbal*, 556 U.S. at 678; *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (stating that courts "need not accept conclusory allegations or legal conclusions couched as factual [] allegations" (citations and quotation marks omitted)).

Plaintiff appears to allege, in the alternative, that Defendant's labeling violates FDA's regulations governing how flavorings in food are labeled.  Specifically, Plaintiff alleges that federal and state regulations "prohibit false and deceptive identification of the source of a food or beverage's characterizing flavors[,]" and that the Product is false and misleading because it is "required to be accompanied by the word(s) 'artificial' or 'artificially flavored[.]'"  (FAC ¶¶ 72, 75–77.)  Under 21 C.F.R. § 101.22, an artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from . . . natural sources."  *Id*. at § 101.22(a)(1).  However, it is well established in this Circuit that the Complaint "could not allege a claim for private enforcement of FDA regulations."  *Barreto*, 518 F. Supp. 3d at 805; *see also*

*Pichardo*, 2020 WL 6323775, at *3 n.6 ("There is no private right of action for breaches of FDA

provisions, and violations of federal standards do not automatically translate into an actionable

claim under GBL §§ 349–50." (quotation marks and citation omitted)); *Steele*, 472 F. Supp. 3d at

49–50 (stating that "the extensive discussion and argument" between parties about FDA

standards was "without consequence" as the plaintiffs did not have a private right of action to

enforce alleged violations of the FDCA); *Sharpe*, 481 F. Supp. 3d at 105 n.8 (dismissing

plaintiff's separate cause of action based on a violation of FDA regulations because "[t]here is no

private right of action to enforce FDA regulations).  Moreover, in briefing opposing the instant

Motion, Plaintiff misapplies Second Circuit precedent explaining the relationship between a

GBL claim and violations of other statutes that do not provide a private right of action.  (*See* Pl.'s

Mem. 6.)  In the Second Circuit, "a GBL claim is viable where the plaintiff 'make[s] a free-

standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim'

under another statute that is not independently actionable, but fails where the violation of the

other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive

practice that serves as the basis for the GBL [§ 349] claim."  *Nick's Garage, Inc. v. Progressive

Casualty Insurance Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (quoting *Broder v. Cablevision Sys.

Corp.*, 418 F.3d 187, 200 (2d Cir. 2005)).  Here, Plaintiff cannot state a claim because, for

reasons described above, "the conduct alleged to violate the FDA regulations is not so inherently

deceptive as to be misleading to a reasonable consumer under GBL §§ 349–50."  *Baretto*, 518 F.

Supp. 3d at 806 (collecting cases).

Accordingly, because the Court concludes that the Product's labeling would not mislead a reasonable consumer, Plaintiff's claims under the GBL are dismissed.[3]

### 2.  Breach of Express Warranty

"An express warranty is an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Barreto*, 518 F. Supp. 3d at 806 (quotation marks omitted).  To adequately state a claim for breach of an express warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).  In addition, New York law requires that the buyer, "'within a reasonable time after he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy.'" *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2-607(3)(a)).  To satisfy this notice requirement, a plaintiff must "alert [the] defendant that the transaction was troublesome," but need not "include a claim for damages or threat of future litigation." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021) (alterations, quotation marks, and citation omitted).  Although "[t]he sufficiency and timeliness

---

[3] Plaintiff also appears to allege that the Product is misleading because it has a "whiteish appearance, similar to that or a piña colada, which, when seen alongside the promise of '100% Natural Flavors' and the pictures of pineapple and coconut, creates the impression it contains some pineapple and coconut ingredients." (*See* FAC ¶¶ 98–106.)  However, it is not clear to this Court how an *appearance* of "some pineapple and coconut ingredients" is relevant to Plaintiff's claim regarding artificial malic acid.  Moreover, neither party references these allegations in their briefing. (*See generally* Def.'s Mem.; Pl.'s Mem.)  As such, the Court finds that these allegations are unpersuasive.

of the notice is generally a question for the jury," *Tomasino*, 44 F. Supp. 3d at 260 (citation omitted), to adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time," *Grossman*, 516 F. Supp. 3d at 283.

Plaintiff has failed to adequately allege that he provided Defendant with any manner of pre-suit notice, only vaguely alleging that "Plaintiff provided or will provide notice to [D]efendant, its agents, representatives, retailers, and their employees" and that "Defendant received notice and should have been aware of these misrepresentations due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums."  (FAC ¶¶ 168–70.)  These allegations are insufficient to plead pre-suit notice and avoid dismissal.  *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (finding allegation that "[the] [d]efendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years" to be "too conclusory and . . . unsupported by any specific factual allegations" to satisfy the notice requirement for suit (quotation marks omitted)); *Grossman*, 516 F. Supp. 3d at 283 (finding that the plaintiff's allegation that "within a reasonable time after they knew or should have known of [the] [d]efendant's breach, [the] [p]laintiff, on behalf of herself and [c]lass [m]embers, placed [the] [d]efendants on notice of their breach, giving [the] [d]efendants an opportunity to cure their breach, which they refused to do" was "insufficient to plead pre-suit notice" (quotation marks omitted)); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *2 (S.D.N.Y. Mar. 30, 2018) (explaining that "[p]roper factual allegations should, at least, include

the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant," and dismissing claim for breach of express warranty where "[the] [p]laintiffs failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery"); *Singleton*, 2016 WL 406295, at *12 (finding that the plaintiff's allegation that "[the] [d]efendant must have been aware of [the] [p]laintiff's false and misleading advertising claims due to similar suits pending against [the] [d]efendant" to be insufficient to plead pre-suit notice because "[the] [p]laintiff was required to inform [the] [d]efendant, within a reasonable time, of the alleged breach involving his own purchase").

Plaintiff's arguments that pre-suit notice is not required or, in the alternative, that Plaintiff's original Complaint constitutes notice are unavailing. (*See* Pl.'s Mem. 6.) While Plaintiff is correct that there is a "line of New York cases suggesting that the notice requirement does not apply to retail sales," *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (citing *Fischer v. Mead Johnson Labs.*, 341 N.Y.S.3d 257, 259 (App. Div. 1973)), numerous courts in the Second Circuit have explained that "th[is] exception appears to be exclusively applied where the party alleges physical, in addition to economic, injury," *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (2018) (collecting cases); *see also Colpitts*, 527 F. Supp. 3d at 589 (explaining that "[b]ecause [the] [p]laintiff only alleges economic injury in the form of a price premium paid for the [p]roduct, this exception—to the extent it exists at all—is inapplicable," and dismissing breach of express warranty claim for failure to allege pre-suit notice). And, while Plaintiff is correct that there is limited authority for the proposition that a plaintiff's pleadings could constitute pre-suit notice under certain circumstances, (*see* Pl.'s Mem. 6), the Court is persuaded by Judge Failla's reasoning in *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020), in

which she explained that the case from which this limited authority stems (and on which Plaintiff

relies)—*Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584 (App. Div. 1997)—does not

stand "for a broad rule that a filed complaint qualifies as sufficient and timely notice." 440

F. Supp. 3d at 244–45.

Accordingly, Plaintiff's claim for breach of express warranty is dismissed.

### 3.  Fraud Claim

"Under New York law, stating a claim for fraud requires alleging (1) a material

misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent

to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the

plaintiff." *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119

F.3d 91, 98 (2d Cir. 1997)).  And, as explained above, to adequately plead fraud, plaintiffs must

also meet the particularity requirement in Federal Rule of Civil Procedure 9(b), which "requires

that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent,

(2) identify the speaker, (3) state where and when the statements (or omissions) were made, and

(4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam

Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015) (citation omitted).  *See also supra* II.A.

Defendant argues that Plaintiff's fraud claim falters because Plaintiff has failed to plead

any elements of the fraud with requisite particularity, including a puzzling allegation regarding

Defendant's recordkeeping leading to "knowledge" under New York law.  (*See* Def.'s Mem. 10.)

While the Court agrees that Plaintiff's vague allegation that "the records Defendant is required to

maintain . . . provided it with actual and constructive knowledge," (FAC ¶ 176), in all likelihood

does not pass muster under Rule 12(b)(6), or certainly under Rule 9(b), the Court need not even

address this question because the FAC includes even fewer allegations as to scienter.  While

Plaintiff is correct that a fraud claim can plead scienter "generally," courts have been clear that "the plaintiff must still allege facts that give rise to a *strong inference* of fraudulent intent." *Colpitts*, 527 F. Supp. 3d. at 585 (emphasis added) (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020)).  "A plaintiff may demonstrate this inference by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. (citations and quotation marks omitted).  Liberally construed, the sum total of Plaintiff's allegations as to scienter are that Defendant "sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits", (FAC ¶ 110), and that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations," (*id.* ¶ 178).  However, it is well-settled that a company's general profit motive is insufficient to plead scienter.  *See, e.g.*, *Duran*, 450 F. Supp. 3d at 354 ("[S]imply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent.").  And courts frequently find that allegations such as that "[a] defendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label, when it knew its statements to be not true nor accurate" to be "conclusory" and "fall short of the Rule 9(b) standard." *Colpitts*, 527 F. Supp. 3d at 585 (quotation marks omitted) (collecting cases).

Accordingly, Plaintiff's fraud claim is dismissed.

### III. Conclusion

For the foregoing reasons, Defendant's Motion is granted.  Plaintiff has requested that should the Court grant Defendant's motion, this Court grant Plaintiff leave to file a Second Amended Complaint.  (*See* Pl.'s Mem. 7.)  Leave to amend a complaint should be freely given

"when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quotation marks and citation omitted).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Plaintiff has already amended her complaint once after being prompted by a pre-motion letter from Defendant stating all of the grounds on which it would move to dismiss.  (*See* Dkt. No. 10.)  "Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."  *Turnipseed*, 2022 WL 657413, at *8 (collecting cases); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (alteration, footnote, and quotation marks omitted).

Moreover, Plaintiff has failed to otherwise suggest that she is "in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this [O]pinion."  *Turnipseed*, 2022 WL 657413, at *8 (collecting cases); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint).

As such, the Court dismisses Plaintiff's Amended Complaint with prejudice.  The Clerk of the Court is directed to terminate the pending motion, (*see* Dkt. No. 22), enter judgment for Defendant, and to close the case.

SO ORDERED.

Dated:   February 7, 2023
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

27